**KAZEROUNI LAW GROUP, APC**
Gor Antonyan (354718)
gor@kazlg.com
David J. McGlothlin (253265)
david@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**KAZEROUNI LAW GROUP, APC**
Nadir O. Ahmed (290810)
nadir@kazlg.com
2221 Camino del Rio Suite 101,
San Diego, CA 92108
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
Dylan Appel-Oudenaar

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **DYLAN APPEL-OUDENAAR, Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**THE HERTZ CORPORATION,**<br><br>**Defendant.** | **Case No.:**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**<br><br>1) **FAILURE TO PAY WAGES, CAL. LAB. CODE §§ 200-203;**<br>2) **FAILURE TO PAY ALL WAGES TWICE A MONTH, CAL. LAB. CODE § 204;**<br>3) **CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL"), CAL. BUS. & PROF. CODE §§ 17200,** *ET SEQ.*<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Dylan Appel-Oudenaar ("Plaintiff") brings this Complaint by and through his attorneys and on behalf of all others similarly situated, against Defendant The Hertz Corporation ("Hertz" or "Defendant") and alleges upon information and belief as follows:

## INTRODUCTION

1. This action arises from Defendant's unlawful and deceptive business practices in operating an employee commission system that systematically denies earned wages to California workers.

2. Defendant has implemented and maintained a software platform—known internally as The Hertz Local Edition System (HLES)—that inaccurately assigns Hertz Gold Plus Rewards membership status to rental car customers during transactions.

3. Under Hertz's compensation policy, employees are entitled to commission for upsells made to customers. However, employees are not eligible to receive commission for upsells made to customers who are designated as Gold Plus Rewards members. As a result, when the HLES system falsely labels a customer as a Gold member—when the customer is not actually enrolled in the program—the employee who made the sale is denied the commission they otherwise would have earned.

4. Plaintiff is a natural person and a resident of the State of California who was employed by Hertz within the state. As part of his employment, Plaintiff was promised base wages plus commissions for upselling certain rental add-ons and services to customers. However, as a direct result of Hertz's internal policies and technology, Plaintiff and similarly situated employees were routinely deprived of the commissions they rightfully earned under Hertz's compensation structure.

5. Upon information and belief, Hertz applies the same HLES system and commission denial policy across its California locations. The HLES platform misattributes Hertz Gold Plus Rewards membership status to customers who are not actually enrolled in the program by matching random membership accounts to

1  customer profiles, thereby triggering internal rules that block commission payments to employees.

6. Defendant's conduct constitutes a violation of the California Labor Code, including but not limited to sections 200–203 and 204, by failing to timely pay earned wages, including commissions, and by knowingly using internal systems that deprive employees of those wages.

7. Defendant's actions also violate California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq., by engaging in unlawful and unfair business practices that deny earned compensation, mislead employees about the terms and conditions of their employment, and provide Hertz with an unfair competitive advantage in the labor market.

8. Defendant knowingly or recklessly designed, maintained, and deployed the HLES platform in a manner that directly caused the misclassification of customer accounts and the resulting nonpayment of wages. Despite being aware of the system's defects or manipulative functionality, Defendant failed to correct the issue or compensate affected employees.

9. In the alternative, Defendant negligently implemented and maintained the HLES platform and commission structure, resulting in the widespread denial of commissions to employees throughout California.

10. Through its deceptive practices, Hertz has reaped substantial unjustified profits at the expense of its employees.

11. Plaintiff brings this action to challenge the unfair, deceptive, and illegal actions of Defendant.

12. Unless otherwise indicated, the use of Defendant's names in this Complaint include all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendant, respectively.

**JURISDICTION AND VENUE**

13. Jurisdiction is proper under 28 U.S.C. § 1332(d) ("CAFA"), which provides for original jurisdiction of the federal courts of any class action in which any member of the class is a citizen of a state different from the defendant, and in which the matter in controversy exceeds, in the aggregate, the sum of $5 million, exclusive of interest and costs.

14. The total claims of individual class members in this action are well in excess of $5 million, as Defendant's unlawful and deceptive practices have caused significant financial harm to Plaintiff and the putative class. Statutory and compensatory damages, as well as restitution and other relief, further substantiate the aggregate amount in controversy under 28 U.S.C. § 1332(d)(2).

15. Further, on information and belief, Defendant's illegal compensation practices have impacted thousands of employees across California, who were similarly undercompensated by Defendant. Defendant's uniform conduct satisfies the requirements of 28 U.S.C. § 1332(d)(2), (5).

16. Based on the belief that thousands of individuals in California would be included in any certified class, the numerosity requirement, exceeding forty members, is satisfied, pursuant to 28 U.S.C. § 1332(d)(5)(B).

17. Plaintiff and most of the members of the putative class are citizens of California, and Defendant is a citizen of Florida and Delaware. Therefore, diversity of citizenship exists under CAFA as defined by 28 U.S.C. § 1332(d)(2)(A).

18. Venue is proper in the United States District Court for the Central District of California pursuant to 18 U.S.C. § 1391(b)(2) because Plaintiff resides in this judicial district of California, a substantial part of the events giving rise to Plaintiff's causes of action against Defendant occurred within the Central District of California, and Defendant regularly conducts business in the State of California and County of Los Angeles.

## PARTIES

19. Plaintiff is, and at all times mentioned herein was, a natural person, individual citizen and resident of the County of Los Angeles, State of California, and within this judicial district.

20. Upon information and belief, The Hertz Corporation is a corporation formed within the State of Delaware, with its principal place of business located at 8501 Williams Rd, Estero, FL 33928.

## FACTUAL ALLEGATIONS

21. In or around June 2022, Defendant hired Plaintiff as a Manager Trainee at Hertz Pasadena located at 2070 E Colorado Blvd, Pasadena, CA 91107.

22. As part of the compensation structure offered to Plaintiff, Hertz provided an hourly base wage and monthly commissions. These commissions were tied to Plaintiff's success in selling add-on products and services—referred to internally as "upsells"—to customers during the rental process.

23. Plaintiff was informed that his commission percentage typically ranged from, on average, approximately four percent (4%) to eight percent (8%) per month. The specific commission rate was dependent on Plaintiff meeting certain sales quotas, including a required number of qualifying upsells during the pay period.

24. At the time of hiring, Hertz's representatives expressly emphasized the importance of upselling to customers. Plaintiff was told that the ability to meet minimum upsell targets was not only important for maximizing pay but also a condition of continued employment.

25. The commission structure was not optional or incidental—it was a central component of Hertz's compensation model and a primary performance metric for employees in Plaintiff's role.

26. During part of his employment, Plaintiff was responsible for handling customer rental transactions, explaining optional add-ons, and finalizing rental

contracts. As part of this process, Plaintiff routinely offered and successfully sold various optional products and protections to customers.

27. These upsells included but were not limited to loss damage waivers, supplemental liability protection, roadside assistance, coverage for personal belongings, vehicle upgrades, and more.

28. When customers accepted one or more of these add-ons, Plaintiff understood that he had successfully completed a qualifying upsell and would receive commission on that sale—provided the customer was not enrolled in Hertz's Gold Plus Rewards program.

29. Under Hertz's internal policy, employees do not receive commission for upsells made to customers who are Gold Plus Rewards members. Hertz treats these transactions as ineligible for commission.

30. However, while working at Hertz as a Manager Trainee, Plaintiff noticed a recurring and unexplained pattern: numerous transactions he completed—where he had clearly upsold qualifying products to customers—were later marked in the system as non-commissionable due to the customer being designated as a Gold Plus Rewards member.

31. This occurred even when the customer had no knowledge of the program, was not enrolled in the Gold Plus Rewards system, and had never indicated membership at the time of the transaction.

32. Plaintiff later discovered that these discrepancies were caused by the internal software platform used by Hertz to process transactions, known as HLES.

33. HLES is used to record rental agreements, customer information, and payment methods. Once a rental transaction is initiated, HLES performs a number of automated functions to generate the customer's rental contract and associate it with existing accounts in Hertz's database.

34. One of these functions includes an automated search for Gold Plus Rewards member records based on the customer's identifying information—such as name, driver's license number, or contact details.

35. If HLES identifies a record in the Gold Plus Rewards database that appears to match the customer's information—or contains overlapping data—it may automatically link that loyalty account to the current rental contract.

36. However, in some instances, when a customer agreed to purchase one or more optional protections or upgrades during the rental process, HLES would search the Hertz database for a Gold Plus Rewards account that already included similar add-on selections—such as loss damage waiver or roadside assistance.

37. If the system identified such an account, it would automatically assign that Gold Plus Rewards membership number to the current rental contract—even though the actual renter was not the person associated with that Gold account and had no relationship whatsoever to that loyalty profile.

38. This process occurred without any involvement from the employee, and without the knowledge or consent of the customer. The result was that the system falsely classified the transaction as one involving a Gold Plus Rewards member, based solely on upsells matching a completely unrelated individual's loyalty account.

39. In other words, the Gold Plus Rewards number assigned by the system belonged to a random third party whose only connection to the transaction was the presence of similar upsells in their profile.

40. Plaintiff discovered this error by reviewing rental records and noticing that the HLES system had assigned Gold Plus Rewards membership numbers to his customers that clearly belonged to other individuals.

41. The assigned loyalty accounts contained information—such as names, addresses, and driver's license numbers—that did not match Plaintiff's customer's

identity, and in some cases, were associated with people living in entirely different states.

42. Plaintiff observed this pattern on a recurring basis during his employment. Numerous customers who clearly were not Gold Plus Rewards members—some of whom expressly stated they had never enrolled in the program—were nevertheless tagged in HLES as Gold members based on this flawed process.

43. This misclassification directly triggered Hertz's rule disqualifying upsells made to Gold Plus Rewards members from commission eligibility. As a result, even when the sale was legitimately completed by the employee, the commission was denied solely due to the system's arbitrary assignment of another person's Gold number to the contract.

44. Plaintiff had no control over the Gold Plus Rewards designation and no way of knowing, in advance, that the system would apply a third party's loyalty account to the transaction.

45. In or around December 2022, Hertz extended a promotion to Plaintiff for the position of Branch Supervisor at its Burbank location, located at 810 S. Victory Blvd., Burbank, California 91502.

46. Plaintiff accepted the promotion and began working at the Burbank branch shortly thereafter. In this new role, Plaintiff was responsible not only for continuing to assist customers and process rentals but also for overseeing the performance and training of front-line employees at the branch.

47. After assuming his supervisory duties, Plaintiff began to observe that the same commission-related issues he had previously experienced were also affecting the employees under his supervision.

48. Specifically, employees at the Burbank branch were also being denied commission on legitimate upsells because the HLES system was misclassifying customers as Gold Plus Rewards members—often by assigning random third-party loyalty account numbers to the rental contract.

49. Plaintiff's employees were unaware of why they were losing commissions and began expressing frustration and confusion about the discrepancies in their compensation.

50. As a supervisor, Plaintiff reviewed their rental records and noticed the same pattern: Gold Plus Rewards membership numbers belonging to other individuals—often with different names, addresses, or out-of-state license information—were being attached to the contracts, causing those transactions to be ineligible for commission under Hertz's policies.

51. These observations confirmed to Plaintiff that the problem was not limited to his own experience or an isolated location, but rather a systemic issue stemming from the design and implementation of the HLES system, affecting multiple employees across at least one other California branch.

52. Plaintiff made numerous complaints to upper management regarding the improper denial of commissions resulting from the HLES system's misclassification of customers as Gold Plus Rewards members.

53. In some instances, Plaintiff's complaints prompted limited corrective action. Management occasionally adjusted individual transactions or manually credited a commission, but these responses were inconsistent, ad hoc, and did not address the systemic problem within the HLES platform.

54. More often, however, Plaintiff's complaints were ignored or dismissed. Management failed to take meaningful steps to investigate the broader issue or modify the system's logic to prevent future misclassifications.

55. In or around December 2024, Plaintiff's employment with Hertz was terminated.

56. Despite fulfilling all job responsibilities—explaining upgrade options, obtaining customer consent, and processing the sale—employees like Plaintiff were systematically denied earned commissions due to a defective system design that was invisible to both the employee and the customer.

57. Because commissions represented a significant portion of total compensation, these denials had a direct and measurable impact on employees' earnings. In many months, Plaintiff's actual compensation fell short of what he would have earned had Hertz properly credited his qualifying sales.

58. Plaintiff relied on the accuracy and fairness of the commission system as part of his financial planning and career decisions. Hertz, in turn, encouraged employees to maximize upsells with the promise of higher pay tied to performance.

59. The practice of reassigning customers' rental contracts to unrelated Gold Plus Rewards members defeated this promise. Even when Plaintiff made successful sales to non-members, HLES intervened and redirected the benefits of the transaction to the company by disqualifying the employee from commission.

60. The misclassification created an artificial barrier to commission eligibility and was built into the system's functionality, suggesting that the outcome was not accidental, but rather the result of design or deliberate indifference to its consequences.

61. Hertz made no effort to correct or reverse these erroneous Gold Plus Rewards assignments after the fact. Employees were not given any process to dispute or override the false classification.

62. Additionally, neither Plaintiff nor other employees were ever trained or informed that the system could or would randomly assign a Gold Plus Rewards number from an unrelated individual to a customer's contract, thereby voiding commission eligibility.

63. Hertz's failure to disclose or address this internal mechanism created a compensation system that was fundamentally misleading. Employees were held to upsell targets and threatened with termination for failure to meet those targets, all while being systematically denied commissions that would have counted toward their goals.

64. Upon information and belief, Hertz applied this commission policy uniformly across its California locations, resulting in a pattern of company-wide wage suppression.

65. Hertz's actions deprived Plaintiff and other employees of wages that were earned and due under the law. The commission losses were not isolated mistakes but rather part of a recurring and foreseeable consequence of the systems and policies implemented by the company.

66. Hertz is liable for these unpaid wages because it created, maintained, and enforced both the HLES software and the internal compensation rules that disqualified transactions based on Gold Plus Rewards membership—regardless of whether the customer was actually a member.

67. By knowingly using a flawed or deceptive system to withhold wages, Hertz violated California Labor Code provisions requiring employers to pay all earned compensation in a timely manner.

68. The misclassification also constitutes an unlawful and unfair business practice under California's Unfair Competition Law, as it allowed Hertz to retain the benefit of employee labor while avoiding payment of promised compensation.

69. Plaintiff brings this action on behalf of himself and similarly situated employees to recover unpaid wages, statutory penalties, and stop the unlawful business practices described herein.

## CLASS ALLEGATIONS

70. Plaintiff brings this action on behalf of himself and on behalf of all others similarly situated ("the Class").

71. Plaintiff represents, and is a member of, the Class, consisting of:

> All employees of Hertz in California who, at any time during the applicable statutory period, were eligible to earn commission compensation and were denied such commissions due to HLES misclassifying customers as Hertz Gold Plus Rewards members, thereby rendering otherwise commissionable upsells ineligible for compensation.

72. Plaintiff seeks to represent the following subclasses:

   A. All former employees of Hertz who terminated their employment with Hertz during the statutory period and were not paid all earned wages, including commissions, at the time of termination (hereinafter "Sub-Class A");

   B. All current employees of Hertz who are eligible to earn commission compensation but are not paid all earned wages, including commissions (hereinafter "Sub-Class B").

73. The Class and the Sub-Class are referred to collectively herein as the "Classes."

74. Excluded from the Classes are Defendant's officers, directors, and employees; any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Further excluded from the Classes are members of the judiciary to whom this case is assigned, their families, and members of their staff.

75. Plaintiff reserves the right to modify the proposed Class definitions, including but not limited to expanding the Class to protect additional individuals and to assert additional sub-classes as warranted by additional investigation.

76. Numerosity: The members of the Classes are so numerous that joinder of all of them is impracticable. While the exact number of members of the Classes is unknown to Plaintiff at this time, based on information and belief, the Classes consists of thousands of individuals within California.

77. Commonality: There are questions of law and fact common to the Classes, which predominate over any questions affecting only individual members of the Classes. These common questions of law and fact include, without limitation:

   • The nature, scope, and operations of the wrongful practices of Defendant;

- Whether the HLES system misclassified non-Gold Plus Rewards customers by assigning third-party loyalty account numbers to their contracts;
- Whether Hertz's commission policy disqualified such transactions from commission eligibility based solely on Gold Plus Rewards designation;
- Whether employees were improperly denied earned commission as a result of Hertz's system and policy;
- Whether Hertz knew or should have known about the impact of the HLES system and failed to take corrective action;
- Whether Hertz's conduct violates California Labor Code §§ 200–203 and 204;
- Whether Hertz's conduct constitutes unfair or unlawful business practices under the Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 et seq.;
- Whether former employees are entitled to waiting time penalties under Labor Code § 203;
- Whether current employees are entitled to injunctive and declaratory relief;
- Whether Plaintiff and the Classes sustained monetary damages and, if so, the proper measure of those damages.

78. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Classes. Plaintiff was employed by Hertz in California, was eligible for commissions, experienced the denial of commission due to the HLES system, and was subject to the same compensation policy as other Class members.

79. <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of members of the Classes. Plaintiff's Counsel are

competent and experienced in litigating consumer class actions. Plaintiff has retained counsel experienced in consumer protection law, including complex class action litigation involving employment law and unfair business practices. Plaintiff has no adverse or antagonistic interests to those of the Classes and will fairly and adequately protect the interests of the Classes. Plaintiff's attorneys are aware of no interests adverse or antagonistic to those of Plaintiff and the proposed Classes.

80. <u>Predominance</u>: Common questions of law and fact predominate over any questions affecting individual Class members. This action arises from a uniform practice: Hertz's use of the HLES system and commission policies that, in tandem, caused the improper denial of earned wages to employees across multiple locations.

81. <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most members of the Classes would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Classes Member.

82. Defendant has acted on grounds that apply generally to the Classes, so that Classes certification is appropriate.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**Failure to Pay Wages**
**(Cal. Lab. Code §§ 200-203)**

83. Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

84. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

85. California Labor Code § 200 defines "wages" to include all amounts for labor performed by employees, whether the amount is fixed or based on time, task, piece, commission, or other methods of calculation. Commissions promised by an employer, once earned, constitute wages under California law.

86. California Labor Code § 201 provides that when an employee is discharged, all earned and unpaid wages are due and payable immediately at the time of termination.

87. Defendant violated Labor Code § 201 by failing to pay all earned wages, including commission compensation, to Plaintiff and other Class members who were involuntarily terminated during the statutory period.

88. California Labor Code § 202 provides that when an employee voluntarily resigns, wages earned and unpaid at the time of resignation are due and payable no later than 72 hours after the employee gives notice of resignation.

89. Defendant violated Labor Code § 202 by failing to timely pay all earned wages, including commissions, to Class members who voluntarily resigned from employment during the statutory period.

90. California Labor Code § 203 provides that if an employer willfully fails to pay wages owed under §§ 201 or 202, the employee is entitled to waiting time penalties of up to 30 days' wages at the employee's regular rate of pay.

91. Defendant's failure to pay wages owed at termination of employment was willful. Defendant knew or should have known that its commission denial practices resulted in unpaid earned wages and failed to take reasonable steps to rectify the issue.

92. Plaintiff and the Classes seek all available remedies under California law, including statutory penalties, wages, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### Failure to Pay All Wages Twice a Month
### (Cal. Lab. Code §§ 204)

93. Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

94. California Labor Code § 204 requires employers to pay all wages earned by employees during a given pay period at regular intervals, no less frequently than semi-monthly. This obligation applies to all earned wages, including base hourly pay, overtime, and commissions, unless otherwise exempted.

95. Commissions that are earned and calculable must be paid no later than the payday for the period in which they were earned.

96. Plaintiff and Class members earned commission wages through successful upsells during the course of their employment with Defendant. These commissions became payable once the sale was completed, and the customer agreed to the additional rental products or services.

97. Defendant failed to timely pay such commissions on a semi-monthly basis as required by law. Due to Defendant's internal commission policy and use of the HLES system—which misclassified customers as Gold Plus Rewards members—otherwise commissionable sales were improperly rendered ineligible, resulting in unpaid wages.

98. As a result, Plaintiff and Class members were not paid all wages earned during the applicable pay periods, in violation of Labor Code § 204.

99. Defendant's failure to comply with Labor Code § 204 was not the result of a good faith dispute or administrative error but rather stemmed from a systemic policy and technological framework that denied earned compensation.

100. Plaintiff and the Classes seek all available remedies under California law, including statutory penalties, wages, and attorneys' fees and costs.

//

# THIRD CAUSE OF ACTION
## VIOLATIONS CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL")
### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

101. Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

102. The UCL defines "unfair competition" to include any "unlawful, unfair, or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

103. The UCL imposes strict liability. Plaintiff need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

### *"Unfair" Prong*

104. A business practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practices against the gravity of the harm to the alleged victims.

105. Defendant's conduct constitutes "unfair" business practices within the meaning of the UCL because, as alleged above, Defendant implemented and maintained a system—specifically, the HLES—that systematically misclassified customers as Hertz Gold Plus Rewards members, triggering commission denial policies that deprived Plaintiff and Class members of earned wages.

106. Defendant failed to disclose or correct the flaws in the HLES system, and knowingly applied internal policies that denied employees commission pay based on arbitrary and inaccurate customer classifications. These policies and system behaviors harmed workers who met their sales targets but were still denied compensation.

107. Defendant's conduct was unethical, oppressive, and substantially injurious to employees, who relied on commissions as part of their expected wages and were evaluated and retained based on their ability to meet upsell metrics.

108. The harm to Plaintiff and members of the Classes grossly outweighs the utility of Defendant's practices. Indeed, Plaintiff alleges that there is no utility of Defendant's conduct that justifies the practices alleged with specificity herein.

### *"Unlawful" Prong*

109. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

110. Defendant's acts and practices alleged above constitute unlawful business acts or practices as it has violated the California Labor Code as described herein.

111. The violation of any law constitutes as "unlawful" business practice under the UCL.

112. These acts and practices alleged were intended to or did result in violations of the above cited laws.

113. Defendant's practices, as set forth above, have allowed Defendant to retain earned wages owed to employees and shifted the financial burden of Defendant's flawed systems onto its workforce.

114. Consequently, the practices of Defendant constitute unfair and unlawful business practices within the meaning of the UCL.

115. As a direct and proximate result of Defendant's unfair and unlawful business practices, Plaintiff and the Class suffered cognizable injury, including but not limited to lost wages, reduced take-home pay, and financial harm. These damages represent tangible injuries directly resulting from Defendant's practices.

116. Pursuant to the UCL, Plaintiff and the Classes are entitled to preliminary and permanent injunctive relief and order Defendant to cease this unfair and unlawful competition, as well as disgorgement and restitution to Plaintiff and the Classes of

all the revenues associated with this unfair and unlawful competition, or such portion of said revenues as the Court may find applicable.

117. Additionally, Plaintiff and the members of the Classes seek an order requiring Defendant to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment against Defendant as follows:

- Class certification of this action;
- Appointment of Plaintiff as Class Representative;
- Appointment of Plaintiff's attorneys as Class Counsel;
- An award of actual, compensatory, and punitive damages;
- An award of unpaid wages together with interest thereon pursuant to California Labor Code §§ 218.6 and 1194(a);
- An award of waiting time penalties under California Labor Code § 203;
- Injunctive and other equitable relief against Defendant as necessary to protect the interests of Plaintiff and other members of the Classes, and an order prohibiting Defendant from engaging in unlawful and/or unfair acts described above, including public injunctive relief;
- An Order awarding declaratory and other equitable relief, including rescission, as necessary to protect the interests of Plaintiff and the members of the Classes;
- An Order enjoining Defendant from engaging in the unfair, unlawful, and deceptive business practices complained of herein, including through public injunctive relief;
- An order requiring imposition of a constructive trust and and/or disgorgement of Defendant's ill-gotten gains and to pay restitution to Plaintiff and all members of the Classes and to restore to Plaintiff and members of the Classes

all funds acquired by means of any act or practice declared by this court to be an unlawful, or unfair business act or practice, in violation of laws, statutes or regulations, or constituting unfair competition, plus pre-and post-judgment interest thereon;

- An order for injunctive relief pursuant to California Code of Civil Procedure § 1780;
- An award of attorneys' fees and costs as allowed by statute, including without limitation those recoverable under Cal. Lab. Code § 218.5, Cal. Code Civ. Proc. § 1021.5, any common law "private attorney general" equitable doctrine, any "common fund" doctrine, any "substantial benefit" doctrine, and/or any equitable principles of contribution and/or other methods of awarding attorneys' fees and costs;
- An order declaring Defendant's conduct as unlawful;
- Pre- and post-judgment interest;
- An Order requiring Defendant to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice; and
- Any other relief the Court may deem just and proper, including interest.

**DEMAND FOR TRIAL BY JURY**

118. Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.

Dated: April 2, 2025

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: /s/ *Gor Antonyan*

Gor Antonyan, Esq.
*ATTORNEYS FOR PLAINTIFF*